All right I believe we're ready for our fourth case for today James Perez against Staples Contract & Commercial LLC. So Mr. Stinson. Good morning welcome. So this case as you know got reversed or got some re-judgment granted and I just want to start out by talking about the obvious which is summary judgment is only relevant if the evidence is taken in the light most favorable for the plaintiff and every court that grants or denies summary judgment always says they're going to do that but really doing is something completely different and it's very clear to us in this case that that did not occur. Having said that it probably doesn't really matter on some level to this this panel because as you know review is de novo but I would beg this court to take a serious look at my clients affidavit in this case that was generated by him reviewing 4,000 pages of Staples documents and collating all of that important information about his performance into that document. It's so significant in this case that the Staples never went back to that our own underlying documents contradict anything that he said in that affidavit and for that I know that the district court was a little vague about why it was that what it was relying on or not relying in that affidavit but the reality of it is is that affidavit is unrebutted in all respects. I'm not sure about that and I think there were some concerns about the consistency with the purported to show his monthly sales for March April May and June of 2016 and the district court said well you know that's all very well and good but where's the foundation for this you know where do these numbers come from and I can't find it and so I would like to know what your response is. Yes so let me say a few things about that one is it came from the flash reports which are essentially the spreadsheets that were attached to his affidavit. All of them are in there. The other thing I would say that I think there's a lot I think it needs to be nailed down more Staples certainly comes up with quite different numbers for these months. Right but let's look at yeah I agree with your honor that Staples came up with different numbers but our numbers were based on the flash reports and in detail client by client what the numbers were for each client that exhibit 31 which is it says it lists each individual client and then it says what the corresponding win amount for that is. Staples just has an email from Fred Cole saying that there were lower numbers and it doesn't detail what accounts he's relying on what he's looking at and it doesn't even say anything about him looking at flash records it's just a conclusory email and what's interesting about that is is that that's an email that allegedly he generates with based on some communication well I don't know with who but potentially with my client and my clients notes on that same discussion would be on his laptop which we serve Staples with a copy of this lawsuit not fired served them a copy of the lawsuit seven twelve days after my client was laptop so I would say this about exhibit 31 though you know talk about talk about the strength of the evidence in here Fred Coe is basically an email that's unsupported by any names of any companies or any breakouts how we understand that but you know and if we could if there were a foundation for this without a foundation it's not good enough to controvert that June it's that June 2nd email right that you're talking about the flash reports I would say a few things about that one is the flash reports are attached are referenced as exhibits to the to the affidavit but I would also say this there were missing flash reports Staples never produced and they were not only they were not only on the laptop but they were just they should have been kept in Staples regular course of business so it's not like we had everything and they've never they may never turn to their own records and said any of the specific allegations in 31 are contradicted by our records they never did that and my client certainly would be in a position to have personal knowledge as to when amounts and to what clients he had or what accounts he had so he has personal knowledge about this and we feel that that's enough to establish he complied with this when a month I would also add that a couple of quick questions please since and you've talked a lot about the laptop in your appellate briefs did you make any spoliation argument in the district court we weren't able to find it yeah so what happened on that was we mainly had motions on motions to compel what they yeah so the answer the question is no we did not make spoliation arguments down below that didn't mean that we're not going to make them for a jury instruction and there's not and it didn't mean that we weren't going to you know try to you know argue that later in the case we certainly didn't respond to the motion for summary judgment thank you but you are careful did not make counsel excuse me on exhibit 31 mr. Perez claims a $50,000 win for USPS Elk Grove village yes I thought the evidence indicated that Elk Grove village the post office was buying a few hundred dollars of product at a time did I misunderstand that $289 in the district yes yes so I'm glad you asked that question because I think it's important to clarify it so the way this works is my client went in met with Elk Grove and Elk Grove says is down listen this is our expectations about what we're gonna buy in the course of the next year their first purchase was only $289 this was not this was a brand new account but based on his conversations with them about what they expected the purchase in the next year he was in a position to calculate this win is $50,000 and what's interesting about it is that's how one post office one post office was going to spend $50,000 on cleaning fluids in a year yeah well it wasn't just cleaning it was a lot of different other materials okay but yes the answer of that is yes could I ask you it seems to me that the biggest problem you're facing here is causation with your two state law claims with respect to the the question of jury duty and the debate between deposition and affidavit about whether the defendant did or did not accommodate the four days of jury duty is there any evidence indicating that another four days would have in essence moved plaintiff from the red to the green and complying with the ASP standards I don't know that answer but I would say this well okay well okay I mean it sounds like the answer is no there is no such well he got fired so you know you're asking me what he have been able to close some more business but with the four days have made the difference between yes and no I think is judge Hamilton precisely question oh it's pretty short for that much change right right but I mean for instance in December he closed a nine hundred hundred thousand dollar account with export fitness can I just run out of time one other concern I have with causation on the jury duty in particular there they put him on this ASP plan no later than the 11th of March maybe it's the 7th maybe it's the 11th I don't care he doesn't even hear about jury duty until after that so how can the ASP be retaliation for the jury duty and I would say much the same thing about this plaques mild for detergent which is happening long after the company has decided to put him on an ASP so how can causation we're not we're not saying he got the ASP because of retail for because of him opposing jury duty or because he opposed the sale of the legal detergent I mean the timeline for that's wrong as your honor just pointed out but what we are saying is that the way they enforced the ASP was retaliatory and that their decision to fire him based on the ASP was retaliatory in other words at some point they have to make this decision about did he comply with the ASP and if the motive or one of the motives for him for their conclusion that they're gonna fire him because he didn't comply with the ASP was because they're mad at him for going to jury duty or they are mad at him for opposing the sale of a legal detergent in New York which the evidence indicates all right no we know this point okay thank you thank you very much we will move to miss Jones may I please the court good morning your honor Jennifer Jones on behalf of defendant appellee staple contract and commercial LLC it's our position today that the district court's decision should be affirmed in its entirety because the pellet has failed to establish any genuine issue of material fact that there is any basis for employer liability on his claims of retaliatory discharge from our perspective this case represents an effort by the appellant to sort of throw everything but the kitchen sink and his claims in a concerted effort to obfuscate the record so as to survive summary judgment and despite these extensive efforts that appellant went to in order to obfuscate the record the district court actually did carefully consider and correctly rejected each of the comments arguments during not only the MSJ proceeding but also through its consideration of appellants rule 59e motion to alter and amend the judgment appellant has raised numerous evidentiary issues in this case for instance he argued that the that the district court did not properly consider appellant's affidavit but the district court was very clear in rendering both of its decisions that it did in fact consider mr. Perez's affidavit except for those portions that either directly contradicted his deposition testimony or were obviously inadmissible because they were conclusory and not based on personal knowledge appellant has also attempted to rely on all sorts of extraneous tool made spreadsheets for which no evidentiary foundation was laid to support his opposition to staple motion for summary judgment he says that your evidence excuse me but I understand mr. Simpson to be arguing that this June 2nd email from mr. Koha coming up with the numbers 48,000 for March 75,000 for April and 25,000 for May basically has no foundation either so there's no evidence that he wasn't performing up to the standards of the ASP in response to that the district court actually did I believe and I don't want to misunderstand mr. Simpson's argument but I believe he's arguing that for that reason the court should defer to exhibit 31 but in fact in rule 59e motion and order the judge did consider exhibit 31 and carefully in fact considered the charts that were created by Perez during the course of the litigation which showed his monthly sales for the month of March through June of 2016 and notwithstanding that the district court actually viewed the contents of that exhibit in a favorable light to mr. Perez the district court still found that mr. Perez failed to satisfy the AFP not only because the numbers still did not add up to the minimum baseline requirements of the AFP but also because he failed to do simple things like attend five required meetings for weeks on that point however miss Jones wasn't it pretty clear that mr. Koha was using an average of meetings per week however with the district court properly found was that the AFP did not refer to averages the AFP referred to five meetings for well if mr. Koha if mr. Koha was who was who put it in place and he was using an average to calculate compliance that would seem to be more relevant to me than the district judge's interpretation of it and is it also correct that mr. Koha miscalculated the using a denominator of 16 weeks rather than 13 weeks because mr. Koha is using an exemplary exemplary figure does not mean that that's not what the AFP required the AFP requirements were very clear they stated that would that have applied would that have applied during the week that he was on vacation so that means that any so so excuse me then so that taking vacation meant a violation of the ASP because he would have one week or he would not have matter whether or not we consider his vacation because if you look at the week that he was not on vacation he did not meet those requirements of five meetings per week so even if we even if we don't discount the vacation week he's still not meeting the requirements so it's not an issue that the court even needs to reach in the state so you think that you think the document is clear that that the meetings per week was ever each and every week yeah Koha's Koha's email on June 2nd says average per week right it does your honor it does not matter because even setting aside the issue of five meetings per week if we're looking at just the numbers on the other components so there were three components to the AFP and anyway you cut mr. Perez is not meeting one of the three requirements anyway you cut it he's even viewing exhibit and I believe going back to your second point so even viewing exhibit 31 and the light most favorable to mr. Perez those figures filled and set me aside whether or not mr. Koha miscalculated those figures it doesn't matter because the district court ultimately in its rule 59 emotion gave plaintiffs the numbers that he calculated and based on those numbers calculated by plaintiffs appellant he still could not establish that he met the figures required for either the pipeline or his sales growth number so so can I say he I think maybe what you're getting at here though is his argument that he has this or he formerly had this facility solutions account executive position where the required numbers were much higher million dollars and so on but in fact as this change is being implemented he has this Darwin account manager position which with a much lower expectation and he's he's in a position where he's told he's got to develop all this business even though it's impossible for him to do it your honor in response to that question so mr. Perez was aware of his AFP requirements and the Darwin program and the district court correctly found that despite having all the knowledge available to him he could have raised those issues at that time and he did not he agreed to the AFP as it was he didn't have much bargaining power at that point did he it seems to me a little unrealistic well actually I mean with respect to that issue there's ultimately regardless of whether or not he agreed to the AFP I think the court even addresses this point even assuming that he didn't agree to the AFP it is what the AFP requires it was the requirements of his employer and even if the employer was treating him unfairly that unfair treatment began well before and well in advance of his jury duty service and the detergent issues arose so there's still no causal connection to establish a palant point I wanted to address another issue that appellant raised in his in his leading argument regarding the laptop the exfoliation claims as he admitted were not raised at the district court level and even if they have been the district court properly found that appellant still has not stated to date what exactly he expects he will find on that laptop to change the outcome of this case so for that reason the district court properly disregarded that argument so was he entirely removed from the export account after he said it's illegal in New York or after he received the word and then tried to have the conference call to sell this Klax mild Fort detergent I guess it's got an ingredient in it that New York doesn't permit did they just take him off altogether was he just nominally on it but out of the loop I am not sure that that's in the record your honor however I do know that mr. Koa told appellant not to worry about the detergent issue because that would be addressed by mr. Koha and the supplier so I'm not sure as to whether or not he was taken off of that account or not I know that the accounts that he contends are at issue were actually removed he well before his ASP and well before any of these issues arose so again with respect to his arguments that he was removed from the record that there was any causal connection between that and his employment termination I realize I'm running out of time so with that being said we would ask the court to affirm the district court ruling in the entirety all right thank you anything further mr. Simpson your honor I could speak for an hour but I want you to speak yeah I know I want to be respectful of your time if you want to grant me some time I'll give you a minute to wrap up just a few random sentences here that I think it's important that the ASP says that he's his titles account executive that every single person says that he was an account manager under Darwin was completely different set of rules I think it's important that Julie Claver year-over-year growth in the last month before Jim Perez was fired was negative 1.6 and Jim Perez's year-over-year growth was positive 66 and I think that that the affidavit that was submitted by Staples from Christina Gonzalez regarding jurisdiction that claims that Jim Perez is being sued by Staples does nothing to establish the opposite which is how how this these companies would be assuming statements and as such you don't think there's jurisdiction and there should have been a motion brought under rule 26 C which talks about a transfer of interest and it wasn't done and there there has to be a reason okay all right thank you very much thanks to both counsel we'll take the case under advisement